UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-0074-TBR

**BETTY COX**                                                                                           **PLAINTIFF**

v.

**O'CHARLEY'S, LLC,** *et al.*                                                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants O'Charley's, LLC and O'Charley's Restaurant Properties, LLC's Motion to Exclude Ronald Dotson as an Expert Witness. [DN 34]. Plaintiff Betty Cox responded. [DN 40]. Defendants replied. [DN 44]. As such, this matter is ripe for adjudication. For the reasons stated herein, Defendants' Motion to Exclude Expert Witness is **granted**. [DN 34].

**I.     Background**

On June 7, 2020, Plaintiff, Betty Cox, and her family went to the Paducah O'Charley's restaurant for lunch. [DN 34]. They were regular patrons of the restaurant, however, due to Covid-19 restrictions, their normal table was not available. *Id.* Instead, Mrs. Cox and her family were led to a different part of the restaurant that required taking a step up to a raised platform to reach the booth. *Id.* On the way to the table, Mrs. Cox did not see the step, tripped, and sustained injuries from her fall. *Id.* She filed the present common law negligence claim against Defendants O'Charley's LLC and O'Charley's Restaurant Properties, LLC in a Kentucky Circuit Court. [DN 1-1]. She alleges that Defendants (1) "failed in [their] duty to keep the restaurant premises in a reasonably safe condition," (2) "allowed an unreasonably dangerous condition to persist on the restaurant premises," and (3) "failed to warn of a latent and unreasonably dangerous condition on the restaurant premises." *Id.* Defendants removed the action to federal court. [DN 1]. Just prior to

1

the completion of the discovery process, Defendants filed to present motion to exclude Dr. Ronald Dotson, one of Plaintiff's expert witnesses. [DN 34].

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), district courts must act as gatekeepers to ensure that expert testimony is both reliable and relevant. *See Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). Although Rule 702 commonly applies to scientific expert testimony, "it applies equally to witnesses whose expertise stems from other types of specialized knowledge," which gives a district court "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," provided, of course, "that the gatekeeping mandate of *Daubert* is followed." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Importantly though, "[t]he test of reliability is 'flexible,' and the *Daubert* factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Kumho Tire*, 526 U.S.

at 150). The Sixth Circuit has instructed "that the *Daubert* factors 'are not dispositive in every case' and should be applied only 'where they are reasonable measures of the reliability of expert testimony.'" *Id.* (quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)).

### III.   Discussion

Defendants move to exclude the testimony of Plaintiff's expert Dr. Ronald Dotson, who, according to his Curriculum Vitae (CV), is "an accomplished researcher, consultant, instructor, and author in Occupational Safety, Security, and Emergency Management for private and government entities... He is also involved in expert testimony in the area of general safety, human factors, and incident causation." [DN 34-19]. Dotson is an Associate Professor of Occupational Safety at Eastern Kentucky University where he teaches "the dynamics of occupational safety, security, and environmental management." *Id.* Dotson has over twenty years of experience in the safety field with specific expertise in "criminal and workplace investigations, school safety, and general construction industry safety." *Id.*

In his report,[1] Dotson "identified an undue trip hazard not readily observable or avoidable, which he opined was attributable to organizational and operational root causes on behalf of O'Charley's." [DN 40 at 5]. Dotson states that he based his "summary of causation" on "the Bird Model of Root Causation and works of Alphonse Chapins and his theories of Usability/Human Centered Design." [DN 34-10]. Dotson's findings are centered around statutory and regulatory requirements from the Occupational Safety and Health Admiration ("OSHA"), the American Disability Act ("ADA"), and the American Society for Testing and Materials ("ASTM").

---

[1] In their motion, Defendants attach copies of Dotson's initial report, [DN 34-7], supplemental reports, [DN 34-9], a final report, [DN 34-10], and an opinion summary, [DN 34-12], which Dotson provided, along with other documents, during his deposition. [DN 34 at 3–4]. Defendants note that none of Dotson's reports were dated or signed, as required by FRCP 26(a)(2)(B) and further argue that only Dotson's initial report was timely. [*See* DN 44]. Dotson's testimony is excluded on other grounds. Accordingly, the Court will not address these issues at this time.

3

Defendants ask the Court to exclude Dotson's testimony for six reasons: (1) "Dotson's opinions as to the alleged violations of statutes, regulations, codes and/or standards are irrelevant and do not 'fit' a common law negligence claim;" (2) "Dotson admits having no knowledge of the standard of care owed by a restaurant in a common law negligence claim;" (3) "Dotson's opinions are not based upon specialized knowledge which will assist the trier of fact, and instead involves matters jurors can understand and decide for themselves;" (4) Dotson lacks the requisite knowledge, skill, expertise, training or education;" (5) "Dotson's opinions are based upon written standards employed by safety professionals, generally in relation to OSHA applications, and not common law standards employed by restaurants;" and (6) "Dotson admits not having sufficient information to offer an opinion that there were organizational and operational root causes which contributed to the incident." [DN 34 at 5].

In the Sixth Circuit, there are three stages to a Rule 702 analysis. First, "the witness must be qualified by knowledge, skill, experience, training, or education." *Rios*, 830 F.3d at 413 (quotations and citations omitted). Second, "the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, "the testimony must be reliable." *Id.* All three stages are at issue today.

### A. Qualification

With regard to Dotson's professional background, training, and experience, Defendants allege that "Dotson demonstrates no training, education, or experience that is relevant to or provides support for his ability to offer the opinions outlined in his one disclosed report, his deposition or the undisclosed reports." [DN 34 at 21]. This, Defendants argue, is predominately because there is nothing in his CV concerning the restaurant industry. *Id.* Conversely, Plaintiff contends that Dotson's "lack of experience in the restaurant industry" should not be a reason for

exclusion. [DN 40 at 11]. Plaintiff argues that Dotson's "immense knowledge, skill, experience, training, and education [qualify] him to opine on the trip hazard at issue in this case." *Id.* at 10.

The Court, upon review of Dotson's CV, understands Defendants' concern regarding Dotson's lack of "training, education, or experience" with the restaurant industry. However, "to be qualified as an expert witness under Rule 702, an expert need not be a 'blue-ribbon practitioner with optimal qualifications' or have 'an intimate level of familiarity with every component of a [particular hazard] as a prerequisite to offering expert testimony." *Jackson v. E-Z-GO Div. of Textron, Inc.*, 326 F. Supp. 3d 375 (W.D. Ky. 2018) (internal citations omitted). Nor do experts need "direct experience with the precise subject matter or product at issue." *Id.* at 387. Though Dotson may not be familiar with the restaurant industry, he is an expert in safety with over twenty years of experience. [DN 34-19]. His "area of expertise includes criminal and workplace investigations, school safety, and general and construction industry safety." *Id.* This means he is qualified to identify potential safety risks—such as a possible trip hazard. However, qualification as a general safety expert alone, without an understanding of the specific industry, makes Dotson's testimony inadmissible under the relevance requirement.

### B. Relevance

Rule 702 requires, among other things, that the proffered opinion of an expert witness must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Relatedly, "[i]n *Daubert*, the Supreme Court emphasized that in addition to examining the reliability of the expert's testimony, the trial court must ensure that the proposed expert testimony is 'relevant to the task at hand.'" *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 643 (S.D. Ohio 2015) (quoting *Daubert*, 509 U.S. at 580). Thus, the question must be asked "whether the reasoning or methodology properly can be applied to the facts in issue ... so as to

assist the trier of fact." *Id.* (citations omitted). In essence, "[t]he relevancy prong goes to whether the proposed testimony is probative of a material issue in the case." *Id.* (citing *Daubert*, 509 U.S. at 580).

### i. Statutes and Regulations

Defendants assert that Dotson's testimony of "the alleged violations of statutes, regulations, codes, and/or standards are irrelevant and do not 'fit' a common law negligence claim." [DN 34 at 5]. Specifically, Defendants argue that Dotson's opinions are inadmissible due to his reliance upon the ADA, OSHA, and ASTM. They argue that because Plaintiff made a common law negligence claim, not a negligence *per se* claim, the statutory and regulatory provisions are irrelevant. *Id.* In support of this argument, Defendants rely on *Wright v. House of Imports*, a Kentucky Supreme Court case. In *Wright*, the court found that an expert's testimony regarding building code violations—statutory or regulatory duties and the alleged breach of those duties—should not have been permitted in a common law negligence case where the standard of care was that of a "reasonably prudent person" not a "statutory [or regulatory] standard of care." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). The court held that when dealing with a common law negligence claim "statutory duties … [are] irrelevant—that is, [the statutory regulations do] not 'fit' a fact in issue." *Id.* (citing *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 578 (Ky.2000)).

Defendants also note that Plaintiff does not fall into the class of individuals protected by the ADA and OSHA. [DN 34]. The ADA is limited to persons with a disability and OSHA is limited to employees. Plaintiff is neither, nor does she claim as much. [DN 34-4; DN 40 at 18]. Plaintiff does not contest this, however, she requests to preserve "her right to argue about discovery of inspection performed in compliance with the ADA and OSHA, given their potential relevance"

beyond Dotson's testimony. [DN 40 at 19]. This opinion is limited to the motion to exclude Dotson as an expert witness. Accordingly, the Court will not rule on the use of the ADA and OSHA in other aspects of this case such as foreseeability, at this time.

Because Cox admittedly does not fall into the class of individuals protected by the ADA or OSHA, the only part of Dotson's testimony that could potentially be admissible is the portion that relies on the ASTM standards. Even though Plaintiff does not specifically address the distinction between common law and *per se* negligence claims, she does argue that "[i]t is difficult to envision a case to which the ASTM F1637-19 directive to avoid short-flight stairs is more relevant." [DN 40 at 14]. Cox further states that "Dotson's testimony apprises the jury of widely known and published, albeit voluntary, standards which counsel against the use of short-flight stairs and describes ameliorative measures to be deployed where they cannot be avoided." *Id.*

Regarding the ASTM standards, Defendants argue that the same rationale for unenforceability, specifically the holding in *Wright*, applies. The Court disagrees. The ADA and OSHA regulations are excludable because Cox is not a member of the class of individuals protected and because the Kentucky Supreme Court has held that when a claim is under a common law negligence theory, statutes and regulations are irrelevant. *see Wright*, 381 S.W.3d at 213. This holding was based on the different standards of care used in common law negligence and *per se* negligence claims. *Id.* Further, if a plaintiff wanted to argue violations of the statutes and regulations, they simply could bring a claim for negligence *per se*. Conversely, the ASTM standards are voluntary. This means that negligence *per se* claims cannot be brought for a violation of the ASTM. Accordingly, *Wright* is not applicable to that portion of Dotson's testimony.

### ii. Matters of Common Knowledge

Defendants argue that Dotson's remaining testimony—testimony not relying on the ADA and OSHA—is not based on specialized knowledge but involves matters jurors can understand and decide for themselves. [DN 34]. In support of this argument, Defendants provide a non-exhaustive list of opinions from Dotson's report which do not require expert testimony. *Id.* For example:

> (1) It is a bad idea to make someone with mobility issues go up steps
> (2) Older people can sustain more serious injuries than young people in falls
> (3) Plaintiff may not have heard the verbal warning because she has a hearing aid
> (4) Plaintiff may have misunderstood the verbal warning
> (5) If the step is in a darker area, it may be hard to see
> (6) The carpet is the same on the floor, back of step and top of step which may make it harder to see
> (7) The path of travel appears narrow and is obscured; servers and tables are distractions

*Id.* These statements from Dotson's report, along with others not listed, are matters of common knowledge.

Plaintiff argues that Dotson's testimony, specifically on the "hazard of short flight stairs … as described in the ASTM F1637-19, is directly on point and furnishes information to the jury that it would not otherwise have available to it with common knowledge and experience." [DN 40 at 12]. The Court disagrees. Limiting Dotson's testimony to only non-statutory (or regulatory) standards reduces his "expertise" to that of common knowledge or understanding. An expert is not necessary to determine whether a single step may be a "trip hazard." Such a determination can be found by a jury without the help of a safety expert. As the Supreme Court has noted,

> [E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'

*Salem v. U.S. Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) (citation omitted).

Here, after hearing the testimony of witnesses, the jurors will be able to decide whether the step in question was an "undue trip hazard." Dotson's limited testimony possesses no specialized knowledge and, thus, he cannot possess an expert opinion. Indeed, eyewitness testimony, in combination with the jurors' normal life experiences, will provide the jury with sufficient information so that it can draw its own conclusion concerning the cause of Mrs. Cox's fall. *See Salem,* 370 U.S. at 35, 82 S. Ct. 1119. Therefore, the Court finds that Dotson's testimony should be excluded.

### iii.  Lack of Understanding and Application of the Standard of Care

Defendants provide two additional relevancy arguments. First, they contend that Dotson's lack of knowledge or understanding of the common law standard of care owed by a restaurant should preclude his testimony. [DN 34]. Second, they argue that because "Dotson's opinions are based upon 'methodology' used by safety professionals to determine why an event may have occurred, not common law standards used by restaurants to operate and maintain their premise," they do not meet the *Daubert* standard. *Id.* Conversely, Plaintiff argues that Dotson's lack of knowledge regarding the restaurant industry standard is immaterial because, regardless of the location of the step, Dotson "has set forth a clear opinion founded in published standards that the short-flight stair in question poses a hazard, which assists the jury in deciding whether an 'unreasonably dangerous condition' caused injury to Mrs. Cox." [DN 40 at 15].

Though the Court acknowledges Dotson's extensive understanding of safety protocols, particularly in playground and workplace settings, Defendant's issue with the applicability of his expertise in the present dispute is well founded. In his deposition and report, Dotson focuses on potential causes of Mrs. Cox's fall. [DN 34-8; DN 34-10]. He admitted in his deposition to not

9

understanding common law standards of care, nor the standard of care of a restaurant in the same or similar circumstances. [DN 34-8]. Plaintiff argues that though Dotson does not have any experience with the restaurant industry, he can testify as to an "unreasonably dangerous condition in the restaurant." [DN 40]. However, as noted above, a jury can understand the potential dangers associated with a step without the help of an expert. Further, under Kentucky law, common law negligence requires proof of four elements: "(1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Ames v. Lowe's Home Centers, LLC*, No. 3:20-CV-335-CHB, 2021 WL 4097145 (W.D. Ky. Sept. 8, 2021) (quoting *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016)). Without an understanding of the restaurant industry, Dotson is unable to testify as to the duty, or a breach of the duty, owed by the Defendants to Mrs. Cox. If he does not know what is considered a breach of duty, he also cannot testify as the "causation linking the *breach* to an injury." Accordingly, Dotson's testimony does not "fit" a fact in issue. The Court need not address the reliability of Dotson's testimony because it is excludable under the relevance requirement as stated above.

      Due to the weight a jury places on expert opinions and testimony, the Court finds that exclusion of Dotson's testimony is appropriate. His inability to rely on the standards and regulations he bases majority of his opinions, and his complete lack of understanding of the restaurant industry and the applicable standard of care required in common law negligence cases is sufficient cause for the Court to implement its "gatekeeping" role and exclude Dotson as an expert witness.

## IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Exclude Ronald Dotson as an Expert is **GRANTED**. [DN 34]. Defendants' prior Motion to Exclude Ronald Dotson as Expert is **DENIED AS MOOT**. [DN 32].

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 23, 2022

cc: counsel